Crosby-Dredging. Okay, the final case for today is 2017-30441 Ecosystem Investment Partners v. Crosby-Dredging. Counsel, you may proceed. Good afternoon, Your Honors. May it please the Court, my name is John Balhoff and I represent the appellant in this matter, Ecosystem Investment Partners. We are here before the Court on appeal seeking reversal of two findings made to the Court. The first is we seek a reversal of a finding that EIP is not within the zone of interests of NEPA to bring this NEPA injunctive suit and instead find that NEPA, excuse me, EIP is among the class of plaintiffs that can bring this suit. Second, we seek a reversal of the District Court's decision that the Corps of Engineers was not required by NEPA to report and analyze EIP's mitigation bank credits as part of the compensatory mitigation on their New Zydeco Ridge project. Now, the traditional NEPA injunction case is going to be something more along the lines of Sierra Club, Birdwatcher, Hunter, or a property owner who has property interests or some interests affected by a rail line or a pipeline or something like that that does damage to their property or some other damage. This is a little bit different. It's not your traditional NEPA damage case, but it's still one of a type that has been recognized by this Court. And I know the District Court cited the Sabine River Authority case as a means to rule against EIP, but we actually think that that is a very good case for EIP in this case, and I'll tell you why. In that case, the plaintiffs were basically water conservation authorities, and they had wanted to condemn property to build a dam for a reservoir to deal with water conservation for the next 40 years. Well, the thing that got in their way was that a non-development easement was granted to the Department of the Interior, and they could not condemn the property anymore. So the District Court in that case found that those water conservation entities did not have standing, either Article III standing or a zone of interest standing, and this Court reversed and found both, found that it had Article III standing and zone of interest standing. And the similarities in that case, or that case has a lot of similarities to this one. Number one, it found that those water conservation authorities had zone of interests, or its conservation interests were within the zone of interest of NEPA. Similarly, EIP has environmental interests as a mitigation banker. It is within the government's regulatory and statutory scheme for the preference of compensatory mitigation and using mitigation banks. Also note that the harm that the plaintiffs in Sabine wanted to prevent stemmed from the donation of a non-development easement, and that's one of the critiques we've heard from the defendants or the appellees on this side was, hey, we're building our own compensatory mitigation. Who's going to be against restoring the wetlands? Well, in that case, it was a non-development easement, and you could say that that's not harming the environment either, but the Court said, no, that is Article III harm, and it is zone of interest harm to these plaintiffs because they can't go forward with their environmental interests. Assuming, arguendo, that you do have Article III standing, where is the environmental harm for to proceed under the statute? Do you believe you don't have to have an environmental harm, or do you believe that you have actually articulated an environmental harm? We believe we do have articulated an environmental harm, Judge, and again, that is part of Article III standing, of course. You have to have some concrete environmental harm and be within the zone of interest to me, but it's a two-tiered prong. Our environmental harm in this case is that, well, it's on multiple levels, but one is the Court didn't consider EIP's mitigation bank credits, and under, for example, Markle Interest, another Fifth Circuit case that the District Court sided against us, the Court found that Article III harm existed, it was that they wanted to protect the dusky gopher frog and encumber the plaintiff's land with an Endangered Species Act protection, and in that case, they said, look, your claim for lost property value and your claim for inability to develop your property, although economic, is still an Article III injury in fact. So the mitigation bank credit and the failure to even consider that is an Article III injury in fact, but getting to your point of the environmental interest, there is what's called the temporal gap or the temporal loss. So the Corps of Engineers already did damage to the environment, in this case, did damage to brackish marsh impacts when it did its HYSDRS project, H-S-D-R-S, the HYSDRS project. There is damage to the environment now that has not been offset until and unless the mitigation efforts are complete. The Corps has chosen, they could have chosen mitigation bank credits, which would automatically now offset that environmental damage. In this case, they've done that. Until that's complete, there is damage to the environment right now suffered by everyone within the LPV, including EIP, which has its mitigation bank within the LPV. And in fact, its mitigation bank is the only mitigation bank for brackish marsh impacts that could have been used by the Corps for compensatory mitigation. And finally, Your Honor, this court in Sabine, as well as other courts around the country, but in Sabine, recognized that an increased risk to the environment stems from a NEPA violation. That's what NEPA was designed to protect. And here's the language from Sabine where the court found that. It said there is environmental injury in fact because of the failure to prepare an EIS creates a risk that environmental impacts will be overlooked and quote, is itself a sufficient injury in fact to support standing. So we have those various harms, including environmental harms, suffered by EIP in this case. Getting back to the similarities with Sabine, in that case, the EIS was designed to protect EIP. They tried to, and Pelley's in this case, tried to paint EIP as the disgruntled contractor. Really we're more like the water conservation plaintiffs in that case. A disgruntled contractor, they said, would be someone who is working on the dam and somehow lost out on this building opportunity to build the dam. They said, look, the water conservation authorities have the environmental interest here, but this guy that's going to build the dam, he's just there to build a dam. He doesn't necessarily have the environmental interest. In our case, EIP, as the mitigation banker, has the environmental interest. It is part of the regulatory and statutory scheme for environmental mitigation. Now, if you have a dirt mover out there who's doing part of the fill... You've got to show environmental harm, though, don't you? You're saying environmental interest. Correct, and that's... But in order to have the statutory standing, you've got to show some environmental harm. And that's what I was just talking about with... All right. All right. So... What's the harm that you pleaded? The harm that's pleaded is that we are a mitigation banker who had sufficient mitigation bank credits to offset the hysteris, brackish impact damages. The Corps had a statutory and regulatory obligation to consider these mitigation bank credits as the preferred source of mitigation bank credits, yet did not do so whatsoever in their NEPA reporting. That harms the environment how? I'm trying to follow you. I listened to everything you said to Judge Elrod, and maybe I'm not listening closely enough. Tell me how that harms... What's the injury to the environment? Again, number one, this Court in Sabine said that since NEPA is to protect the environment and its reporting is supposed to have everyone have an informed decision on the impacts, on the alternatives, and when you violate that statute, you have created harm to the environment. We cite the Marsh case, Sierra Club v. Marsh as well, and then Judge Breyer, Justice Breyer, had a good quote on that where he said, you know, again, NEPA is designed to protect against environmental harm. So when you set the steamroller of the bureaucratic process in play, you have a hard time unwinding that. There is the environmental harm. That is what we are protecting against when you are supposed to report. The environmental harm, number one, again, as I said, is the temporal gap. There is damage created by hysteris right now that is not offset until mitigation is completed. Number two, there is environmental harm because there is now an increased risk of harm to the environment that was done when there was a failure to comply. There's harm because there's an increased risk of harm? That's exactly... So you're telling me the risk of harm equals harm. Is that what you're saying? That's exactly what the courts have said. There's a risk of harm that equals harm. That is what the courts have said, Your Honor. What case says that? Sabine says that. Sierra Club v. Marsh by Judge Breyer says that. Those are all in our brief. All right. So, and again, in this case, under the... But it's a positive for the environment. Again, that's what it was in Sabine. It may not be the maximum positive in the shortest period of time, but it's a positive. So how can it be a negative? That's exactly what it was in Sabine, Your Honor. It was a non-development easement was land that no one can develop and can be preserved. And in this case, it's the same thing. They're doing a project of $13 million that will not have... Again, here's the whole reason why mitigation bank credits are preferred. It undergoes substantial monitoring by the Corps. The Corps is the one who actually certifies whether credits should be issued. 25% of the credits are issued when the project is complete. 25% more don't get issued until a year out. 25% more don't get issued until three years out, that you're still satisfying everything. And 25% more, five years out. So, again... But NEPA doesn't require them to do what you want. It just requires them to consider. That's exactly right. And that's the NEPA violation. But they have considered. No, they... I mean... They did not consider. They just said, we're not going to go back and do anything differently. Judge, they absolutely did not consider, and of course, that's our pleading. They don't have to look... NEPA does not demand a result, okay? So we're not even asking. We don't say, they had to use our mitigation bank credits. Where NEPA was violated, they have to consider my mitigation bank credits. An issue, in this case, an IER, that was not done. At the time, they considered it, and it wasn't available. And then they didn't reconsider it when it wasn't... When it was available. Correct. But even going back, they didn't consider it from the very start. They knew that we had a mitigation bank in play. We bought this particular mitigation bank in 2013, when this project was going on. It get... They certify credits in 2015. So again, part of what should have been done in the NEPA analysis, in the IER, was... All they did was say, we acknowledge that there is a concept of mitigation bank credits. Period. They didn't analyze what banks were out there, whether there were banks in development, what the cost of those banks would have been, when those banks would have come online. That is what they have to do under NEPA, and didn't do. But particularly, when the credits got certified in April 2015, and they issue another report in October 2015, there is still zero mention of mitigation bank credits. They have to analyze that under NEPA. Again, the statute's requirement, former 33 U.S.C. 2317B, 33 U.S.C. 2283. In the regs, 40 CFR, excuse me, 333 2.3. All requirements. WERDA requires the preference that then has to be reported under NEPA, that then we get to sue for, for the capricious failure to follow that under the APA. I think we may have asked you this about ten times, and I apologize, but I'm going to try again, because I'm having trouble. How does your client have a, how is your client harmed by the temporal delay in not buying, taking your credits, instead pursuing this other option? How is your client environmentally harmed, not economically harmed? Again, it is among the, one, it's among the property owners within the LPV. I think anybody within the LPV would have standing to say the CORE has not complied with its obligations. It has not considered all the environmental impacts and alternatives that need to be considered. It has, it has been environmentally damaged by one of these property owners within the LPV. And again, all I can say is that Sabine, Marsh, and all these other cases say that when NEPA has not been followed in this regard, there is environmental harm that needs to be addressed. It looks like I've run out of time on just that one issue, so I'll reserve the rest of my five minutes for rebuttal. Thank you, Counselor. Thank you. Good afternoon, and may it please the Court, Anna Katselis for the United States. With me at counsel table is Stuart Peck, who will argue for four minutes on behalf of Crosby. The district court correctly dismissed EIP's suit, and its judgment may be affirmed on any of three grounds supported by the record. First and foremost, EIP has not established an injury, in fact, necessary for Article 3 standing. I agree with counsel for EIP that an environmental injury is necessary both for Article 3 standing and for zone of interest. It goes to both. And I think I could be most useful here by trying to unpack those two analyses. Counsel is absolutely wrong, however, in his assertion that an allegation of a NEPA violation is itself sufficient to establish Article 3 standing. The Supreme Court has reiterated many times that a procedural right in vacuo is insufficient for Article 3. And perhaps the foundational, the best place to start for Article 3 is Lujan itself, where the Supreme Court explained that a plaintiff asserting a procedural injury, which is what EIP asserts, does not have standing absent a showing that the, quote, procedures in question are designed to protect some threatened concrete interest of his that is the ultimate basis of his standing. So NEPA's procedures are not designed to protect EIP's interest in selling its mitigation credits. There must be an allegation of an increased risk of environmental harm that threatens the plaintiff's concrete interests. And the concrete interest requirement has been interpreted in this context to require a sufficient geographical nexus between the plaintiff and the proposed project site such that they can be expected to suffer those consequences. So EIP has patently failed to demonstrate Article 3 standing. It has not alleged or otherwise demonstrated any increased risk of environmental harm, much less that it will suffer the consequences of such harm due to its geographical nexus to the site. I think Sabine River is readily distinguishable and actually quite instructive. In that case, as my opposing counsel mentioned, you had a water conservation, you had an environmental group, and you also had a water authority. And in those cases, they alleged, and this part began with the procedural injury implicit in the agency's failure to follow NEPA's prescribed procedures as its serious environmental consequences will be overlooked. And they alleged that the action that they were challenging would have adverse environmental harm, in the sense of detrimental impacts to water quality and quantity. And there was an economic impact, and there can be, for Article 3. But ultimately, the court concluded the injuries that these parties allege relate to the adverse environmental effects that they will experience as a result of the Fish and Wildlife Service's acquisition of the Little Sandy easement. No such adverse effects are alleged here by plaintiffs. And again, a very basic but important point here is that standing must appear affirmatively from the record. Much of what counsel has said today they have put in briefs, it is completely absent from their complaint. They did not submit any declarations to support their standing. So based on what is before the court and in the record, an Article 3 injury in fact simply has not been established. And I think, again, this case is readily distinguishable from Sabine River, where you did have an allegation of an increased risk of environmental harm that the plaintiffs connected to their interests due to their proximity. And another way of thinking about the Article 3 issue is that there is not a legally sufficient link between the interests that plaintiffs are asserting, which is an interest in selling their credits to the Corps, and in NEPA's procedures. So for all of those reasons, Article 3 standing has not been established in this case. In addition, EIP plainly has failed to show that it is within the zone of interest that NEPA was intended to protect. And this is a merits problem. It's a failure to state a cause of action under the APA. They have cited a number of cases, and it's very clear that economic harm does not disqualify a plaintiff from being within NEPA's zone of interest so long as they have an environmental interest. And of course, that was the case in Sabine River. The Water Conservation Association and the Water Authority had environmental interests. They also had economic ones. The problem here is that EIP has only an economic interest. And again, it does not matter what EIP says at oral argument or what they have written in their brief. What matters is what is in the record. And there is no environmental interest of any kind in this case. These are normally not significant hurdles for plaintiffs to overcome. This is that rare case. This is a NEPA case in which there is actually no allegation at all that the agency's project will result in an increased risk of environmental harm. That's fatal to the case. It's absolutely fatal. And so there are numerous cases in which plaintiffs with economic interests also had environmental interests. And that is sufficient for NEPA. Here, however, the only interest that EIP alleges, and I think this was made clear in counsel's argument, is that the Corps overlooked its mitigation bank. It wanted to sell its credits to the Corps. The Corps did not buy them. That is not an environmental interest. It is not an interest that Congress passed NEPA to protect. And therefore, it's not within the zone of interest. So, as you understand their argument, as what they're saying, well, but if you don't allow us to turn these things in, to actually use them here, sell them to the United States, I gather is what they want to do, then there's no reason to have them. If you can do a project like this and not use our interest, not buy them from us, is that what they want to do first, if I got that right? If you don't allow that, then the major purpose of the whole statute is somehow undercut. Is that the point? That may be their point. It's not entirely clear to me, but I disagree with the premise and the point. If it is, you know, we've explained in our brief that mitigation credits will often be the appropriate choice for permitted projects. And the Corps permits many, many projects under Section 404 and other provisions. And in those cases, purchase of mitigation credits is often the appropriate choice because, for multiple reasons, which are spelled out in the regs, but, you know, one reason is that committees often lack the scientific expertise to plan mitigation projects. The Corps doesn't lack that. The Corps has that expertise, of course. So we disagree with that. There's many, you know, and they still have their mitigation credits. So, you know, another point here is even if you didn't have, even if an environmental injury wasn't required, which it is, there's not even economic injury because the economic harm that they are complaining about is 100% speculative. Nothing gives them the right. It's not a legally protected right in any sense. It's not a cognizable interest. They had no right to sell their credits to the Corps, and they're just fundamentally wrong about that point. So in any way you look at this case, there's a lack of standing. There's a lack of an interest and also a lack of a failure to meet MIPA's zone of interest requirement. You know, I think the case law is very clear, you know, again on the point, I mean, in many cases, you know, Spokio v. Robbins most recently, but also Lujan made clear that an allegation, you know, there's no, an allegation of a MIPA violation does not establish harm. That's 100% clear. I won't belabor that point. You know, I think I can, if there are no further questions on the first two points, I can briefly turn to the third, which is even assuming the EIP overcame the hurdles of Article III standing and zone of interest, which they haven't, there's no, no violation of MIPA is discernible from their complaint because by the allegations in their own complaint, they did not have sufficient credits to meet the Corps' need when the Corps evaluated its options under MIPA. And it's clear that agencies are not required to consider speculative alternatives and they were not required to supplement because the fact that EIP attained additional credits has no bearing on the impacts, the environmental impacts of the action. So again, there's no allegation of any impact and it's fatal, fatal on multiple levels. If there are no further questions, I think I've covered the points that we wanted to cover. Thank you, Counsel. We have your argument. May it please the Court, Your Honor. Good afternoon. Stuart Peck for Crosby Trudging. You just can't have free floating where there's going to be harm to the environment. They have to prove for injury in fact to their interest, to EECA. They don't do that. They just come in while the environment may be harmed. Well, that's not satisfactory in the case law. Also, they can't use the guise of quote, unquote environmental harm to really what they are disguising their real economic interest here. They have to establish injury in fact. They must establish environmental consequences or harm to be expected. But they have no allegations of actual abuse. They have no allegations of environmental harm to their mitigation bank in Chef Mature. They have no allegations of environmental harm to New Zydeco Ridge. In fact, the work in New Zydeco Ridge is to benefit the environment, to mitigate. And what's puzzling here, it's really puzzling, they're seeking an injunction in joining the innocent contractor, Crosby Trudging, from doing work to mitigate and to benefit the environment, okay? The fact they get an injunction, that would be the detriment to the environment. So by deductive reasoning, it would be harmful to the environment. But this is all theoretical and hypothetical, they say. They say the project may not be completed. Oh, there's a risk here. But the court says you have to have, the Supreme Court says you have to have concrete and particularized injury, injury to them. They allege no injury to them. Then they start in their briefs, which I took, I found very troubling. They cite to all sorts of things that were not in the record, facts after the fact. I've been in front of this court a lot. You don't do that. Justice Kelley even commented at Earth Island Institute that you can't add things after the fact on appeal. And what they do, again, they talk about possible, probable. That's not injury in fact under Article 3. It has to be individualized to them, not just this free-floating environmental injury that's out there. I'd also like to point out that they also use the argument that we're, quote, unquote, adjacent. Well, by the allegations of complaint, Chef Mouture is in Orleans Parish and New Zydeco Ridge is near Slidell, which is in St. Tammany Parish, one county over, to somehow say they're adjacent. That's, by any definition of the word, they're not adjacent. But what they really are, are disgruntled contractor. They're disappointed and under all case law on this case court in Sabine River in Markle that this court does not protect those type of economic interests no matter what they say about, quote, unquote, harm to the environment. So if there are any other questions. Thank you. Thank you. We have your argument. Counsel, you still have time for rebuttal. Thank you, Your Honor. Judge King, I think you were hitting the nail on the head somewhat in your question to opposing counsel, we, basically if there is not, there is not a reversal of the district court in this case. You're basically saying that whenever the core blatantly violates NEPA by not reporting on compensatory mitigation alternatives and instead decides to just proceed with its own project, that the core is doing something that is hopefully environmentally beneficial, that there is no recourse by anyone to that. And that's not the way the APA and NEPA interact. There is a remedy in this case. NEPA has been violated by the core. They have not reported the preferred mitigation bank credits under WERDA, which they have to do, which the cases, and I'm sure, I know you all are prepared. You read these cases. I urge you to reread the cases. These cases do, in fact, say that failure to report these types of NEPA problems is, in fact, NEPA harm, environmental harm, Article III harm, zone of interest harm. Let me just address the, you know, we spent a lot of time on the first issue. I'd like to spend some time on the second issue, which they address as well, and the need to supplement. Again, there is a clear duty to supplement under the NEPA statutes in this case. Again, in the regs, 40 CFR 1502.9, well, first of all, the statute, the NEPA statute, 33 U.S.C. 4332 says you have to report all alternatives. They didn't report any alternatives in this case, in any of the reports, and that's our allegation. 40 CFR 15.029 says that you need a supplemental EIS whenever there are significant new circumstances or information relevant to the environmental concerns and bearing on the proposed action. It's exactly what we had here. You suddenly have a sufficient number of mitigation bank credits that could totally obviate the need for this entire permittee responsible mitigation project, and there's zero reporting on it at all. Again, we don't say you've got to buy our credits, but you've got to report and consider on the alternative. That is a NEPA violation that causes harm to the environment, that gives us standing to complain that NEPA was violated. This just can't go unmet. There has to be a remedy in this case. We do have Article III harm. The courts have said that is not a hard hurdle to meet. We do have zone of interest harm. The courts have said that is not a high hurdle to meet. We've met that in this case. Judge King, I found one other decision that you were part of. It was called Sierra Club versus Federal Highway Administration from 2011, 435 Federal Appendix 336. And again, it goes to the fact that NEPA was violated here. It says a mere listing of the mitigation measures is insufficient to qualify as the reasoned discussion that is required by NEPA. There is no question that there was a NEPA violation in this case and that we alleged it. All right? That is the environmental harm. The, again, as to the pleading, and I know we're facing a hurdle here apparently with maybe a couple of you, but as long as we have pleaded, we are a mitigation banker who had sufficient credits to cover this project. The credits were not considered by the court. The court instead did not report on those mitigation measures. That is sufficient allegations to show that there is environmental interest because, again, a mitigation banker is defined in the regs. It has an environmental interest. It's part of the regulatory scheme and benefiting the environment. That there was NEPA damage involved. The cause of action has been pleaded. Do you think if you had just, suppose you hadn't gotten the second tranche of credits and you just had the three, does that, do they still have to take that? Does that give you standing? I think it does. I think the, obviously the obvious case is, if you may permit me to finish the answer. The obvious case, or the obvious claim is when they came online in 2015, more than a year ahead of the solicitation, even of a bid in this case, that had to be something that had to be reported and considered under NEPA. When there were only three credits, there's, you know, as I was explaining before on how the mitigation banks work, they knew there was a mitigation bank in existence that had three credits that was in the process of being certified for more. And at the very least, they need, again, you can't just wave it off and not report it at all, which is what they did. They should have said, there's a bank, it's got three credits, it's working. We're about, you know, they ultimately did certify enough credits within the year after that, you know, ten months away from there. The core is the one who certifies those credits. They know what's going on. They can't say, I don't, I didn't know about this potential alternative. So they at least had to report on that. And they may say at the end of the day, well, but we don't have three now. We don't have to buy it. But they did violate NEPA by not reporting on the situation of the mitigation bank at that point. They definitely violated NEPA in not reporting when credits came online, certified by the core themselves in April 2015, did not report about it in October 2015, and there's a bid later in 2016. Thank you, counsel. Thank you, your honor.